OSCN Found Document:MEEKS v. GUARANTEE INSURANCE COMPANY

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 MEEKS v. GUARANTEE INSURANCE COMPANY
2017 OK 17
Case Number: 113752
Decided: 02/28/2017
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2017 OK 17, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

Tracy Meeks, Appellant,
v.
Guarantee Insurance Company, Appellee.

APPEAL FROM DISTRICT COURT OF OKLAHOMA COUNTY
HONORABLE THOMAS E. PRINCE

¶0 Employee sued insurer for bad faith refusal to timely comply with several orders of the Workers' Compensation Court awarding employee temporary total disability benefits after insurer--without good cause--withheld employee's benefits on twenty-six separate occasions. Insurer moved for dismissal, asserting employee failed to obtain a certification order from the Workers' Compensation Court--a jurisdictional prerequisite for commencing a bad-faith action in district court. The District Court granted insurer's motion and this Court retained the appeal.

DISTRICT COURT ORDER REVERSED; CAUSE REMANDED FOR
PROCEEDINGS CONSISTENT WITH THIS OPINION.

Rick Bisher, RYAN BISHER RYAN PHILLIPS & SIMONS, Oklahoma City, Oklahoma, for Appellant.
Bob Latham, Brian Carter, Lindsey Elizabeth Albers, LATHAM WAGNER STEELE & LEHMAN, Tulsa, Oklahoma for Appellee.

Colbert, J.

¶1 This appeal was retained to reiterate the proper application of this Court's decision in Summers v. Zurich Am. Ins. Co., 2009 OK 33, 213 P.3d 565, to monetary awards--although paid--not provided as ordered. Today, this Court reemphasizes that an order of the Workers' Compensation Court (WCC) that clearly identifies previously ordered benefits and finds that insurer failed to demonstrate good cause for its delay in, or noncompliance with, providing court ordered benefits satisfies the certification requirements delineated in Summers. Because the certification requirements were met here, employee may proceed in district court on his bad-faith claim against insurer for insurer's alleged bad faith refusal to provide temporary total disability benefits as ordered by the WCC.

FACTS AND PROCEDURAL HISTORY

¶2 On September 10, 2014, the appellant, Tracy Meeks (Meeks), filed a petition in district court alleging that appellee, Southside Recycling LLC (Employer), through its insurance carrier, Guarantee Insurance Co. (Insurer), had in bad faith engaged in a systematic pattern and practice of refusing to pay court ordered temporary total disability (TTD) benefits on twenty-six separate occasions, without just cause. In support, Meeks relied on various previously entered TTD orders by the WCC. In particular, Meeks proffered a June 26, 2014 WCC Order that stated:

The Court previously determined, and ordered, that claimant was, and is entitled to temporary total disability payments. The Court ordered respondent to pay such benefits and respondent had repeatedly failed to comply with the Court's orders.

The Court has given respondent the opportunity to provide just cause as to its refusal or failure to comply with the Court's orders in this matter, and respondent has failed to satisfy its burden in that regard resulting in the court ordering this respondent to pay penalties and interest in its APRIL 15, 2010, AUGUST 18, 2010, SEPTEMBER 30, 2011, JANUARY 4, 2012, JUNE 15, 2012 AND OCTOBER 12, 2012 orders.

Respondent continued to fail to comply with the Court's order for payment of temporary total disability benefits to claimant and now on this 19th day of JUNE 2014, this cause came for consideration, and after hearing arguments of counsel, the Court FINDS and ORDERS AS FOLLOWS:

THAT respondent has again, without just cause, failed to comply to pay claimant temporary total disability payments since the last order of OCTOBER 12, 2012 on the following specific occasions:

DECEMBER 24, 2012, DECEMBER 31 2012,
JANUARY 7, 2013, JANUARY 14, 2013, JANUARY 21, 2013,
JANUARY 28, 2013, FEBRUARY 4, 2013,
MARCH 5, 2013, APRIL 2, 2013, OCTOBER 15, 2013,
OCTOBER 22, 2013, OCTOBER 29, 2013,
NOVEMBER 5, 2013, NOVEMBER 12, 2013, NOVEMBER 19, 2013
NOVEMBER 26, 2013, DECEMBER 3, 2013,
DECEMBER 10, 2013, DECEMBER 17, 2013, DECEMBER 24, 2013
DECEMBER 31, 2013, JANUARY 7, 2014,
JANUARY 14, 2012, JANUARY 21, 2014, JANUARY 28, 2014,
FEBRUARY 4, 2014

for a total of twenty-six (26) separate occasions.

The WCC assessed penalties based on Insurer's late payment of prior TTD awards. However, the WCC denied certification under section 42(A) "due to respondent's carrier paying said penalty requested by claimant, prior to the hearing today."

¶3 Insurer filed its motion to dismiss in lieu of answer contending that Meeks failed to follow the procedural requirements under the Oklahoma Workers' Compensation Act, a prerequisite to commencing a bad-faith action against Insurer in district court. Relying on Sizemore, Insurer alleged that a bad-faith action can be premised only upon a carrier's outright refusal to pay a compensation award. Insurer acknowledged that Meeks sought certification from the WCC pursuant to section 42(A), but that request was denied.

¶4 Relying on Summers, the district court sustained Insurer's motion to dismiss finding that Meeks did not possess a certification or other order complying with section 42(A) and Rule 58. Although the district court acknowledged that the June 26, 2014 WCC Order made detailed findings of fact about Insurer's twenty-six separate occasions in failing to comply with the WCC orders absent good cause shown, the district court based its denial on the WCC's express denial for certification that all prior awards were satisfied prior to the WCC hearing. Meeks appealed.

¶5 Once again, this Court is presented with the confusion surrounding certification procedures and requirements pursuant to section 42(A) of the Workers' Compensation Act and Rule 58 as explained in Summers, 2009 OK 33, 213 P.3d 565, and set forth in Sizemore v. Cont'l. Cas. Co., 2006 OK 36, 142 P.3d 47. The confusion, here, was compounded by the fact that Meeks' bad-faith claim was premised on Insurer's alleged failure to provide benefits as ordered, not on a claim of unpaid benefits. Thus, this Court retained the appeal to reemphasize that the two alternative categories for certification articulated in Summers, and reaffirmed in Silljer v. Mega Life and Health Ins. Co., 2009 OK 44, 213 P.3d 1156 are: "that a final workers' compensation award (1) remains unpaid or (2) benefits have not been provided as ordered." Summers, ¶ 10, 213 P.3d at 568 (emphasis added).

STANDARD OF REVIEW

¶6 The essence of this appeal turns upon the propriety of the district court's jurisdiction-purely a question of law. This Court reviews issues of law de novo without deference to the lower court's legal rulings. K & H Well Serv., Inc. v. Tcina, Inc., 2002 OK 62, ¶ 9, 51 P.3d 1219, 1223.

ANALYSIS

¶7 At the outset, a district court may only exercise jurisdiction in an employee's bad-faith action against his or her employer/insurer when that employee has obtained an order of the Workers' Compensation Court certifying "that a final workers' compensation award either (1) remains unpaid or (2) benefits have not been provided as ordered" without good cause. Summers, 2009 OK 33, ¶ 10, 213 P.3d at 568 (emphasis added). The certification order is the vehicle that confers jurisdiction on the district court. Stewart v. Mercy Health Center, Inc., 2014 OK 101, ¶ 3, 341 P.3d 70, 70 (where this Court reemphasized the procedural mandates for conferring jurisdiction on the district court in a bad-faith action for unpaid WCC benefits). As delineated in Summers, the certification procedures differ for awards remaining (1) unpaid and (2) benefits not provided as ordered.

1. The Unpaid, Late Payment, or Outright 
Refusal to Pay a Monetary Award

¶8 The certification procedures for an insurer's unpaid, late payment of, or outright refusal to pay a final monetary benefit award still owing are two fold: employee must (1) first utilize the mechanism provided in section 42(A)[1] of the Workers' Compensation Act and (2) have the award certified for enforcement as a judgment of the district court pursuant to Rule 58[2] of the Workers' Compensation Court rules. Summers, 2009 OK 33, ¶¶ 9-10, 213 P.3d at 568. Section 42(A) prescribes the conditions for assessing penalties and provides the method for entering an unpaid award, whether accumulative or lump sum, on the judgment rolls. Id. ¶ 12. The policy rationale behind section 42(A) is to encourage timely payment of workers' compensation awards, discourage mere non-compliance, and provide a mechanism for enforcement of the judgment in district court. Sizemore, 2006 OK 36, ¶ 25, 142 P.3d at 53-54. But, an insurer's bad faith refusal to pay an award is beyond that incentive. Id. Notably, section 42(A) only contemplates a dollar amount still owing on a monetary award. Consequently, where no amount is owing, by its terms, section 42(A) does not apply. See Summers, 2009 OK 33, ¶ 13, 213 P.3d at 569; See also Okla. Stat. tit. 85, § 42(A).

¶9 In certifying an award as unpaid pursuant to section 42(A), the employer and its insurer must be given at least ten (10) days notice prior to the trial on certification. Okla. Stat. tit 85, ch. 4, Rule 58 (Supp. 2008). At that time, the employer and the insurer shall be afforded an opportunity to show good cause why the application for an order directing certification to the district court should not be granted. Id. Because the insurer owes a duty to act in good faith and deal fairly towards the injured employee, the insurer bears the burden to demonstrate why benefits were not provided as ordered. See Christian v. Am. Home Assurance Co., 1977 OK 141 ¶¶ 25-26, 577 P.2d 899, 904;[3] Goodwin v. Old Republic Ins. Co., 1992 OK 34, 828 P.2d 431;[4] See also Badillo v. Mid Century Ins. Co., 2005 OK 48, 121 P.3d 1080. Thus, the WCC's inquiry surrounds an insurer's conduct and whether that conduct was justified.

¶10 If the WCC determines that the insurer demonstrated good cause, no certification order will issue. However, if the insurer fails to demonstrate good cause, the WCC "certification order will issue identifying the benefits which have not been provided as ordered. The certification order will make specific findings [of facts] as to the basis for the court's determination" that the insurer failed to demonstrate good cause why the award should not be certified. Summers, 2009 OK 33 ¶ 11, 213 P.3d at 568.

¶11 This Court reemphasizes that where an employee has complied with section 42(A) and Rule 58, and obtains a WCC order finding that an award of monetary benefits remains unpaid without good cause, the employee may

(1) file a certified copy of the certification order, with the award attached, in the district court as a judgment and proceed to execution pursuant to section 42(A) or (2) the claimant may file a claim in tort for the insurer's bad faith. Sizemore, 2006 OK 36, ¶ 26, 142 P.3d at 54. In the latter option, the amount of unpaid benefits listed in the certification order becomes an element of the claimant's damages in the bad faith claim.

Summers, 2009 OK 33 ¶ 12, 213 P.3d at 569. It is patently clear that an employee is not required to first pursue execution of that judgment in district court before commencing a bad-faith action. Id. ¶ 14, 213 P.3d at 569.

2. Benefits not Provided as Ordered

¶12 The second category for certification--benefits not provided as ordered--applies to any benefits award, whether nonmonetary or monetary. "Benefits" is defined generally to include monetary and nonmonetary awards. See Parret v. UNICCO Serv. Co., 2005 OK 54, ¶ 20, 127 P.3d 572, 578. It is well settled that an insurer has a statutory duty to promptly provide workers' compensation benefits. That statutory duty exists, whether monetary or nonmonetary, and includes the provision of benefits pursuant to the terms dictated by the WCC. Failure to do so precipitates the precise economic hardship upon the employee that the employer sought to avoid by purchase of the policy. See Christian, 1977 OK 141, ¶ 21, 577 P.2d at 903. In most cases, a failure to comply with court-ordered benefits, whether unpaid, late, or an outright refusal, is inherently subsumed by this second qualifying category for certification.

¶13 In Summers, this Court held that Sizemore "encompasses an insurer's bad faith refusal to provide any benefits which (1) have been ordered in a final order of the Workers' Compensation Court and (2) have been certified as having not been provided as ordered." Summers, 2009 OK 33, ¶ 9, 213 P.3d at 568. An insurer's bad-faith refusal to provide benefits satisfying prongs one and two articulated in Summers will give rise to an independent, common-law-tort action in district court. Id.; See also Martin v. Gray, 2016 OK 114, ¶ 9, 385 P.3d 64, 67 (a bad-faith claim presents an independent tort). Such reckless conduct, absent good cause, creates a reasonable inference that the reason for the insurer's failure to obey the award involves a refusal to comply. Summers, ¶ 14, 213 P.3d at 569. So, just as an outright refusal to pay a monetary award is beyond the purview of section 42(A), a wilful or intentional refusal to provide benefits as ordered is beyond the statutory remedies found in the Workers' Compensation Act. Id. Resultantly, an insurer's bad-faith conduct in complying with any benefits awarded to an injured employee lies in tort and will be judged by the same standard applicable to the bad-faith conduct by any other insurer. Sizemore, 2006 OK 36, ¶ 25, 142 P.3d at 54.

¶14 An employee seeking certification under the second category for nonmonetary benefits will bypass section 42(A) as there is no unpaid-benefit amount to certify. See Okla. Stat. tit. 85, § 42(A). Rather, that employee should proceed directly to a Rule 58 hearing after providing at least ten (10) days notice to the employer and the insurance carrier pursuant to Rule 58. At the time of hearing, a certification order will issue if the insurer fails to demonstrate good cause. That order must recite the insurer's failure to demonstrate good cause, identify the prior authorized benefits, and state that such benefits were not provided as ordered. This rule is applicable whether an employee seeks judicial relief for a nonmonetary award, e.g., medical benefits, or where an employer has failed to comply with, but ultimately satisfies, a WCC award of monetary benefits. See, e.g., Silljer v. Mega Life and Health Ins. Co., 2009 OK 44, 213 P.3d 1156 (where this Court found that the district court record was devoid of a WCC order "which certifies that previously awarded medical or wage benefits have not been provided as ordered, and demonstrates no good cause for Insurer's failure to do so").

¶15 In the context of an insurer's bad faith refusal to comply with the terms of a monetary benefits award--although ultimately paid--as alleged here, an employee need only demonstrate compliance with Rule 58 and obtain a WCC order indicating that benefits "(1) have been ordered in a final order of the Workers' Compensation Court . . . (2) have been certified as having not been provided as ordered," and (3) that the insurer failed to demonstrate good cause for its failure to obey the WCC orders. Summers, 2009 OK 33, ¶ 9, 213 P.3d at 568.

¶16 From the time that TTD benefits became due in this matter, Insurer had an affirmative duty to ensure that such benefits were timely paid under the terms of the award. After notice and hearing, the WCC expressly found that "respondent has again, without just cause, failed to comply to pay claimant temporary total disability payments since the last order of October 12, 2012 . . . for a total of twenty-six (26) separate occasions." Absent good cause for refusing to pay the benefits pursuant to the terms of the award, Insurer will be subjected to a bad-faith action in district court. The WCC need only make a determination that Insurer failed to comply with prior WCC orders and Insurer failed to demonstrate good cause which is sufficient to satisfy the certification requirements. This Court holds that it did.

¶17 The test articulated in Summers does not impose the use of magical words in satisfying the certification requirements. Here, the WCC found and expressly held that Insurer was ordered to pay benefits, repeatedly failed to do so as ordered, and did not provide just cause for its failures. Insurer's actions place it squarely within the scope of the second category for certification articulated in Summers. Given the breadth and findings of the June 26, 2014 WCC Order, this Court holds the WCC Order is, in fact, a certified order for Insurer's failure to provide benefits as ordered.

CONCLUSION

¶18 Although the June 26, 2014 WCC Order denied employee's section 42(A) request for certification as employer had paid the penalties prior to the hearing, that order satisfied the second recognized certification category under Summers--benefits not provided as ordered. This Court holds that the June 26, 2014 WCC Order, finding Insurer in violation on twenty-six (26) separate occasions in its duty to comply with previously authorized TTD benefits absent good cause, satisfies the certification prerequisites for commencing a bad-faith action in district court.

¶19 Having found that Meeks satisfied the certification requirements of Summers, this Court holds that the district court erred in granting Insurer's motion to dismiss in lieu of answer. Barring Meeks from pursuing a bad-faith claim against Insurer for Insurer's crafty gamesmanship clearly violates Summers and the policy rational underlying the Oklahoma Workers' Compensation Act.

DISTRICT COURT ORDER REVERSED; CAUSE REMANDED FOR
PROCEEDINGS CONSISTENT WITH THIS OPINION

Combs, C.J., Gurich, V.C.J. (by separate writing), Kauger, Watt, Edmondson, Colbert and Reif, JJ., concur;

Winchester, J., dissents (by separate writing);

Wyrick, J., not present and not participating.

FOOTNOTES

[1] Under section 42(A),

A. If payment of compensation or an installment payment of compensation due under the terms of an award, except in the case of an appeal of an award or an award from the Multiple Injury Trust Fund, is not made within ten (10) days after the same is due by the employer or insurance carrier liable therefor, the Workers' compensation Court may order a certified copy of the award to be filed in the office of the Court clerk of any county, which award whether accumulative or lump sum shall have the same force and be subject to the same law as judgments of the district Court. Any compensation awarded and all payments thereof directed to be made by order of the Court, except in the case of an appeal of an award or an award of compensation from the Multiple Injury Trust Fund, shall bear interest at the rate of eighteen percent (18%) per year from the date ordered paid by the Court until the date of satisfaction. On or after November 1, 2001, compensation ordered to be paid from the Multiple Injury Trust Fund shall bear simple interest only at the percentage rate applicable to judgments in civil cases pursuant to Section 727 of Title 12 of the Oklahoma Statutes from the date of the award. Any award from the Multiple Injury Trust Fund prior to November 4, 1994, shall bear interest at the percentage rate applicable to judgments in civil cases pursuant to Section 727 of Title 12 of the Oklahoma Statutes. Upon the filing of the certified copy of the Court's award a writ of execution shall issue and process shall be executed and the cost thereof taxed, as in the case of writs of execution, on judgments of courts of record, as provided by Title 12 of the Oklahoma Statutes; provided, however, the provisions of this section relating to execution and process for the enforcement of awards shall be and are cumulative to other provisions now existing or which may hereafter be adopted relating to liens or enforcement of awards or claims for compensation.

Okla. Stat. tit. 85, § 42 (emphasis added).

[2] Rule 58 of Rules of the Oklahoma Workers' Compensation Court provides:

An application for an order directing certification to district court of any workers' compensation award may be heard after notice to the respondent and insurance carrier has been given at least ten (10) days before the scheduled trial thereon. At such trial the respondent and insurance carrier shall be afforded an opportunity to show good cause why the application should not be granted.

Okla. Stat. tit 85, ch. 4, Rule 58 (Supp. 2008).

[3] In Christian v. Am. Home Assurance Co., 1977 OK 141 ¶¶ 25-26, 577 P.2d 899, 904-05, the Court

approve[d] and adopted the rule that an insurer has an implied duty to deal fairly and act in good faith with its insured and that the violation of this duty gives rise to an action in tort for which consequential and, in the proper case, punitive, damages may be sought. . . . Resort to a judicial forum is not per se bad faith or unfair dealing on the part of the insurer regardless of the outcome of the suit. Rather, tort liability may be imposed only where there is a clear showing that the insurer unreasonably, and in bad faith, withholds payments of the claim of its insured.

[4] "[I]nsurer's implied-in-law duty of good faith and fair dealings extends to all types of insurance companies and insurance policies . . . . [This] includes workers' compensation and employers' liability insurance. . . . The employee, who by statute is made a third-party beneficiary to the workers' compensation insurance, is in the same class as an insured and may expect prompt payment of his/her claim unless the insurer in good faith asserts a basis for contesting it. . . . 'Unwarranted delay[s] precipitates the precise economic hardship the insured sought to avoid by purchase of the policy.'" Goodwin, ¶¶ 10-11, 13, 828 P.2d at 434 (citing Christian, 1977 OK 141, ¶ 21, 577 P.2d at 903). As such, an insurer may be liable for more than the statutorily set recoveries. Id. ¶ 13, 828 P.2d at 434-35.

 

 

Gurich, V.C.J., specially concurring:

¶1 I concur with the majority but write separately to emphasize the appalling conduct that led to the filing of this action. On June 25, 2008, Appellant Tracy Meeks suffered an on-the-job injury with Southside Recycling, who was insured by the Defendant Guarantee Insurance Company. By order of April 15, 2010, Mr. Meeks was awarded temporary total disability benefits, payable at the rate of $299.00 per week for a period of 156 weeks. On more than twenty-six (26) occasions, Guarantee Insurance refused to pay the benefits. Counsel for Mr. Meeks was forced to make multiple trips to the court to seek additional orders for payment. Some orders included a 15% penalty and interest. This pattern continued for several years.

¶2 On June 26, 2014, the Workers' Compensation Court of Existing Claims[1] issued the final order on arrearages, finding that Guarantee Insurance had failed to pay benefits in the amount of $8,940.10 without justifiable reason. The claim was eventually settled. For a period of over four years, Guarantee Insurance habitually ignored valid court orders to pay benefits. The facts of this case are outrageous, and this is exactly the reason why a claimant must have a common law remedy of bad faith. In spite of flagrant violations of multiple court orders over a period spanning from 2010 to 2014, Guarantee Insurance was merely held in contempt and assessed penalties and interest over and over again. The dissent would not allow workers' compensation insurance providers to be sued for bad faith because the Workers' Compensation Court has the power to sanction contempt for failure to pay the award. But the court's statutory power to sanction clearly did nothing to deter the wrongful conduct in this case, and the dissent's citation to § 73 of the Administrative Workers' Compensation Act, which went into effect February 1, 2014, cannot apply to this case because the date of injury was June 25, 2008.[2] Guarantee Insurance's continued conduct evidenced intentional, malicious, and bad faith refusal to pay multiple awards, and neither the payment of the arrearages and penalty nor the settlement stands as a bar to an action for bad faith.

¶3 Prior to 2002,[3] there was little doubt that a claimant who was wrongfully denied benefits after a final award by the Workers' Compensation Court could pursue a bad faith case against the insurer in a court of general jurisdiction.[4] Both Goodwin v. Old Republic Insurance Co., 1992 OK 34, 828 P.2d 431 and Anderson v. U.S. Fidelity and Guarantee Co., 1997 OK 124, 948 P.2d 1216, made clear that intentional acts are statutorily excluded from the Workers' Compensation Act. "If an employee is injured by an insurer's bad faith-intentional failure to pay benefits under an award, the employee has a common law action in tort under the Christian doctrine."[5] An insurer's failure to pay a valid final award of benefits to a claimant in a workers' compensation proceeding is simply not a compensable injury contemplated in the workers' compensation scheme. A bad faith claim against a workers' compensation insurer is separate and apart from the employer/employee relationship and does not arise in the course and scope of employment.[6] In YWCA of Okla. City v. Melson, 1997 OK 81, 944 P.2d 304, this Court allowed discovery to go forward in a district court action against a workers' compensation self-insurance group for the bad faith failure to pay an award.[7]

¶4 In 2006, in Sizemore v. Continental Casualty Co., 2006 OK 36, 142 P.3d 47, the Court unequivocally stated that an action for bad faith is available for failure to pay a valid workers' compensation award. The Court fully discussed the inconsistencies in previous cases and concluded that neither the exclusive remedy provision of the Workers' Compensation Act nor the certification procedure found in 85 O.S. § 42 preempted a bad faith claim against a workers' compensation insurer. The certification process was further clarified in Summers v. Zurich American Insurance Co., 2009 OK 33, 213 P.3d 565. The Court made it abundantly clear that it would be nonsensical to interpret Section 42 to require a party to seek permission from the Workers' Compensation Court to bring a common law action for bad faith. In the case before us, for example, the order of the Workers' Compensation Court merely confirmed the facts that were well known to the parties: that Guarantee Insurance intentionally and without just cause refused to make required payments to the detriment of Mr. Meeks. Although Guarantee Insurance paid the arrearages and penalty as a purge amount to avoid being held in contempt of court and may use such payment in its defense of the bad faith claim, the payment cannot prevent Mr. Meeks from bringing his bad faith claim in the district court.

¶5 "[T]he essence of the intentional tort of bad faith with regard to the insurance industry is the insurer's unreasonable, bad-faith conduct, including the unjustified withholding of payment due under a policy . . . ." McCorkle v. Great Atlantic Ins. Co., 1981 OK 128, ¶ 21, 637 P.2d 583, 587. In a bad faith, breach of insurance contract case, the delay refers to an insurer's duty to act in a diligent manner in relation to investigation, negotiation, defense, and settlement of claims being made against the insured.[8] In a bad faith claim against a workers' compensation insurer, a claimant must prove an unjustifiable delay in payment of an award. The consequences of the delay form the basis of the actual damages.[9] This Court was correct in 1992 in Goodwin when it first recognized a common law tort action for an insurance carrier's bad faith in refusing to pay a workers' compensation award. In Sizemore in 2006, this Court reaffirmed the law by correctly overruling decisions to the contrary in Kuykendall and Deanda. Today's decision fits squarely within the Goodwin and Sizemore line of cases. When a workers' compensation insurer refuses to pay benefits awarded and ordered by the Workers' Compensation Court, such refusal "invites, encourages and gives viability to a bad faith claim by the injured and unpaid worker." Sizemore, 2006 OK 36, 142 P.3d 47 (Taylor, J., concurring ¶ 1).

FOOTNOTES

[1] The Workers' Compensation Court is now the Workers' Compensation Court of Existing Claims. See 85A O.S. Supp. 2013 § 400.

[2] "The general rule is that the law in effect at the time of an employee's injury controls in workers' compensation matters." King Mfg. v. Meadows, 2005 OK 78, ¶ 11, 127 P.3d 583, 589.

[3] In Kuykendall v. Gulfstream Aerospace Technologies., 2002 OK 96, 66 P.3d 374 and DeAnda v. AIU Insurance, 2004 OK 54, 98 P.3d 1080, the Court signaled a dramatic change from long standing law on the availability of a bad faith action arising from failure to pay a workers' compensation award. The Court reasoned that 85 O.S. § 42 was sufficient to prevent employers and insurance carriers from failing to pay their legal obligations. The facts in this case illustrate the fallacy of that logic.

[4] Relying on case law from the Supreme Court, in October of 2000, the case of Susan Huntington v. Reliance National Indemnity Co., CJ-98-7765, (Okla. Cnty. Dist. Ct.), was tried to verdict. Plaintiff alleged a bad faith refusal of the workers' compensation insurance carrier to pay an award of medical benefits. The jury returned a verdict of $200,000 actual and $500,000 punitive damages. The defendant insurance company did not appeal.

[5] Goodwin, 1992 OK 34, ¶ 14, 828 P.2d at 435.

[6] Id., ¶ 12, 828 P.2d at 435.

[7] In Whitson v. Oklahoma Farmers Union Mutual Insurance Co., 1995 OK 4, 889 P.2d 285 and Anderson, 1997 OK 124, 948 P.2d 1216, the Supreme Court clarified that a bad faith claim cannot arise until after there is a valid award. See also Cooper v. Nat'l Union Fire Ins. Co., 1996 OK CIV APP 52, 921 P.2d 1297.

[8] Badillo v. Mid Century Ins. Co., 2005 OK 48, ¶ 36, 121 P.3d 1080, 1096.

[9] "Unwarranted delay precipitates the precise economic hardship the insured sought to avoid by purchase of the policy." Christian v. Am. Home Assurance Co., 1977 OK 141, ¶ 21, 577 P.2d 899, 903.

 

 

WINCHESTER, J., dissenting:

¶1 The administrative law judge used the appropriate statutory power to assure the insurer/employer paid what the WCC ordered. Without question the insurer/employer is required to pay that amount. As in this case, the judge assessed a penalty and the amount ordered was paid, including the penalty. I would reinforce the principle that the judge has the contempt power to insure compliance with the judge's orders. I depart from the majority in expanding "bad faith" to workers' compensation proceedings.

¶2 I continue to hold my view as expressed in the dissent attached to Sizemore v. Continental Casualty Co., 2006 OK 36, 142 P.3d 47. In that case I stated that I would hold consistently to the principal found in both Kuykendall v. Gulfstream Aerospace Technologies, 2002 OK 96, 66 P.3d 374, and Deanda v. AIU Insurance, 2004 OK 54, 98 P.3d 1080. Title 85 O.S.2001, § 42[1] provided the remedy for failure to pay under the terms of the award to the claimant. The exclusive remedies for wrongful delay in payment or refusal to pay, which is provided by the Workers' Compensation statutes exclude common-law remedies.

¶3 The majority opinion continues to allow the providers of Workers Compensation benefits to be sued for bad faith.

In one of the two concurring opinions in Deanda, Justice Boudreau wrote:

"The Oklahoma Legislature designed our workers' compensation system as a fast, efficient way to compensate employees for accidental on the job injuries. The workers' compensation system is a comprehensive statutory scheme to fix compensation for, and provide medical care to, covered employees. Caffey v. Soloray, 2002 OK 82, 57 P.3d 870, 874. It is a quid pro quo between the employer/carrier and the employee. The employee gives up the right to sue in tort, gaining a certain remedy irrespective of fault. Id. In exchange, the employer avoids the high cost of litigation and possible excessive judgments. Upton v. State ex. rel. Dept. of Corrections, 2000 OK 46, 9 P.3d 84, 87.

"To implement this bargain, the Legislature established the workers' compensation system as the exclusive remedy for employees who suffer accidental on the job injuries. Under the exclusive remedy doctrine, compensation benefits replace employers/carriers' tort liability for work-related accidental injuries."

Deanda, 2004 OK 54, ¶¶ 2-3, 98 P.3d at 1090 (Boudreau, J. concurring).

¶4 In the other concurring opinion found in Deanda, Justice Opala opined:

"The very reason an employer's and an insurer's status-based and contract-based immunity from tort liability are coterminous stems, in part, from the equity's principle of subrogation. Insurers, who are bound by an agreement that calls for the indemnification of the insured, agree to stand in the insured's shoes and assume the sum total of the latter's compensation responsibility. To hold that a workers' compensation insurer's immunity from tort liability is not coterminous with that of an insured employer's own immunity would indeed abrogate the latter's protection by removing the bargain's very pedestal and toppling the essence of the tradeoff." [Footnotes omitted.]

Deanda, 2004 OK 54, ¶ 5, 98 P.3d at 1087 (Opala, J. concurring).

¶5 Justice Opala continued in a footnote with this observation:

"Exposing workers' compensation carriers to delictual liability for bad faith would force insurers to hire lawyers to defend against a new class of litigation. Carriers would also have to assume the risk of losing cases and satisfying potentially large verdicts. This uncontemplated liability would be passed on to employers in the form of increased insurance premiums. The added costs to employers would in turn disrupt the equilibrium of costs and benefits that the Workers Compensation Act promised to maintain."

Deanda, 2004 OK 54, n.11, 98 P.3d at 1087, n. 11 (Opala, J. concurring).

¶6 The administrative law judge has been given the power of citing a carrier for contempt for noncompliance with a final judgment of the Commission when the carrier refuses to pay an uncontroverted medical or related expense. The Administrative Workers' Compensation Act, Section 73[2] provides in pertinent part:

"If any person or party attending any proceeding before the Commission . . . refuses to comply with any final judgment of an administrative law judge or the Commission or willfully refuses to pay an uncontroverted medical or related expense within forty-five (45) days after the respondent has received the statement, the person or party, at the discretion of the administrative law judge or the Commission, may be found to be in contempt of the Commission and may be subject to a fine not to exceed Ten Thousand Dollars ($10,000.00)."

¶7 While I would encourage administrative law judges to use their contempt powers consistent with this statute, I would not find that the district court in the cause now before this Court erred in granting the insurer's motion to dismiss. But "crafty gamesmanship" in willfully refusing to pay compensation as ordered by the administrative law judge can be remedied, not only by the penalty interest found in the workers' compensation statutes, but also by a fine for contempt of up to $10,000.00.

¶8 Accordingly, I respectfully dissent.

FOOTNOTES

[1] Title 85 O.S.2001, § 42(A), provided in pertinent part: "If payment of compensation or an installment payment of compensation due under the terms of an award . . . is not made within ten (10) days after the same is due by the employer or insurance carrier liable therefor, the Court may order a certified copy of the award to be filed in the office of the court clerk of any county, which award whether accumulative or lump sum shall have the same force and be subject to the same law as judgments of the district court. Any compensation awarded and all payments thereof directed to be made by order of the Court, except in the case of an appeal of an award . . . shall bear interest at the rate of eighteen percent (18%) per year from the date ordered paid by the Court until the date of satisfaction. . . . Upon the filing of the certified copy of the Court's award a writ of execution shall issue and process shall be executed and the cost thereof taxed, as in the case of writs of execution, on judgments of courts of record, as provided by Title 12 of the Oklahoma Statutes; provided, however, the provisions of this section relating to execution and process for the enforcement of awards shall be and are cumulative to other provisions now existing or which may hereafter be adopted relating to liens or enforcement of awards or claims for compensation.

[2] 2013 Okla.Sess.Laws, c. 208, § 73, eff. February 1, 2014.






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1996 OK CIV APP 52, 921 P.2d 1297, 67 OBJ 2524, Cooper v. National Union Fire Ins. Co. of Pittsburgh, Pennsylvania
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1992 OK 34, 828 P.2d 431, 63 OBJ 823, Goodwin v. Old Republic Ins. Co.
Discussed at Length
 1997 OK 81, 944 P.2d 304, 68 OBJ 2224, YWCA OF OKLAHOMA CITY v. MELSON
Discussed
 2002 OK 62, 51 P.3d 1219, K & H WELL SERVICE, INC. v. TCINA, INC.
Discussed
 1995 OK 4, 889 P.2d 285, 66 OBJ 351, Whitson v. Oklahoma Farmers Union Mut. Ins. Co.
Discussed
 2002 OK 82, 57 P.3d 870, CAFFEY v. SOLORAY
Discussed
 2002 OK 96, 66 P.3d 374, KUYKENDALL v. GULFSTREAM AEROSPACE TECHNOLOGIES
Discussed at Length
 2004 OK 54, 98 P.3d 1080, DEANDA v. AIU INSURANCE
Discussed at Length
 2005 OK 48, 121 P.3d 1080, BADILLO v. MID CENTURY INSURANCE COMPANY
Discussed at Length
 2005 OK 54, 127 P.3d 572, PARRET v. UNICCO SERVICE COMPANY
Discussed
 2005 OK 78, 127 P.3d 584, KING MANUFACTURING v. MEADOWS
Cited
 2006 OK 36, 142 P.3d 47, SIZEMORE v. CONTINENTAL CASUALTY COMPANY
Discussed at Length
 2009 OK 33, 213 P.3d 565, SUMMERS v. ZURICH AMERICAN INSUR. CO.
Discussed at Length
 2009 OK 44, 213 P.3d 1156, SILLJER v. MEGA LIFE AND HEALTH INSURANCE CO.
Discussed at Length
 2014 OK 101, 341 P.3d 70, STEWART v. MERCY HEALTH CENTER, INC.
Discussed
 1977 OK 141, 577 P.2d 899, CHRISTIAN v. AMERICAN HOME ASSUR. CO.
Discussed at Length
 2016 OK 114, MARTIN v. GRAY
Cited
 2000 OK 46, 9 P.3d 84, 71 OBJ 1744, UPTON v. STATE ex. rel. OKLAHOMA DEPT. OF CORRECTIONS
Discussed
 1997 OK 124, 948 P.2d 1216, 68 OBJ 3340, ANDERSON v. UNITED STATES FIDELITY AND GUARANTY COMPANY
Discussed at Length
 1981 OK 128, 637 P.2d 583, McCorkle v. Great Atlantic Ins. Co.
Discussed
Title 85. Workers' Compensation
 Cite
Name
Level

 85 O.S. 42, Repealed
Discussed at Length
Title 85A. Workers' Compensation
 Cite
Name
Level

 85A O.S. 400, Dissolution of the Workers' Compensation Court
Cited