GAASCH v. ST. PAUL FIRE AND MARINE INSURANCE CO.

Skip to Main Content
Accessibility Statement

Help
Contact Us

e-payments
Careers

Home
Courts
Decisions
Programs
News
Legal Research
Court Records
Quick Links

OSCN Found Document:GAASCH v. ST. PAUL FIRE AND MARINE INSURANCE CO.

Previous Case

Top Of Index

This Point in Index

Citationize

Next Case

Print Only

GAASCH v. ST. PAUL FIRE AND MARINE INSURANCE CO.2018 OK 12Case Number: 113035Decided: 02/06/2018THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2018 OK 12, __ P.3d __

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.
 

 

STACEY GAASCH, as Personal Representative of the Estate of TROY GAASCH, Deceased, Plaintiff/Appellant,v.ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Defendant/Appellee,andMcGivern & Gilliard, P.C., an Oklahoma corporation, Defendant.

ON APPEAL FROM THE DISTRICT COURT OF OKLAHOMA COUNTY

¶0 Plaintiff brought an action in the District Court alleging an insurance company failed to timely provide reasonable and necessary medical treatment as ordered by the Workers' Compensation Court. Insurance company filed a motion for summary judgment which was granted by the Honorable Patricia G. Parrish, District Judge. Plaintiff appealed and the Court retained the appeal. We hold: (1) Plaintiff's District Court action alleging breach of contract also included a request for damages resulting from the death of the workers' compensation claimant, (2) The District Court action was based upon alleged delay by a workers' compensation insurer in providing medical care as previously awarded by the Worker's Compensation Court, and (3) The District Court action against the workers' compensation insurer is precluded by an exclusive remedy provided by the Workers' Compensation Act.

JUDGMENT OF THE DISTRICT COURT AFFIRMED

Victor Owens, Tulsa, Oklahoma, for Plaintiff/Appellant.

Jim Loftis, Loftis & Barnard, Norman, Oklahoma, for Plaintiff/Appellant.

Derrick T. DeWitt and Melanie K. Christians, Nelson, Terry, Morton, DeWitt, Paruolo & Wood, Oklahoma City, Oklahoma, for Defendant/Appellee.

EDMONDSON, J.
¶1 Plaintiff brought an action in the District Court alleging the St. Paul Fire and Marine Insurance Company failed to timely provide reasonable and necessary medical treatment as previously ordered by the Workers' Compensation Court. St. Paul filed a motion for summary judgment which was granted. We conclude plaintiff's District Court action based upon a previous workers' compensation court adjudication required plaintiff to obtain a certification order prior to bringing an action in District Court.
¶2 Troy required multiple surgeries over several years due to his work-related injury. Troy was hospitalized due to his work-related injury. He allegedly became malnourished with accompanying weight loss and different physicians recommended a nutritional consult. A nurse case manager recommended monthly a nutritional consult. Troy died during his hospitalization approximately six months after the initial recommendation for a nutritional consult.
¶3 Prior to his work-related injury, Troy underwent a gastric bypass surgery and allegedly suffered from a malabsorption syndrome secondary to this surgery. A disagreement arose between insurer and Troy concerning whether the insurer was required to pay for a nutritional consult. Insurer claimed Troy's nutritional problems were created prior to his work-related injury and his nutritional state in the hospital was not due to the work-related injury.
¶4 During his hospitalization Troy's counsel filed a Form 9 and requested an order from the Workers' Compensation Court for treatment by a nutritionist. The Form 9 was filed three days prior to Troy's death.1 Two days later and one day prior to his death, St. Paul Fire & Marine Insurance Company, the workers' compensation insurance carrier, approved the request for a nutritional consult. Troy died on February 26, 2010.
¶5 A few months later the Workers' Compensation Court held a hearing on the issue of death benefits. The court found "without a doubt that claimant died as a direct result of the original injury." The court made findings in support of this conclusion and relied upon one doctor's report and another doctor's autopsy report. The court awarded a lump sum payment, continuing payments, and an amount for funeral expenses. The payments were ordered to be paid to the surviving spouse and two children. This order was affirmed in part and modified in part by a three judge panel of the court. The order was reduced because one of the children was an adult. The panel agreed that claimant died as a direct result of his original work-related injury combined with "consequential injuries." The Court of Civil Appeals agreed in a subsequent appeal.
¶6 Stacey Gaasch, as personal representative of Troy's estate, brought an action in the District Court for Oklahoma County, and alleged the workers' compensation insurance carrier failed to provide Troy with the reasonable and necessary medical treatment as required by "the final orders of the Oklahoma Workers' Compensation Court."2 Plaintiff alleged McGivern & Gilliard, P.C., had acted as the agent for the insurer. Plaintiff stated the insurer breached its duty of "good faith" and characterized this allegation as a "bad faith" claim.
¶7 The second part of the petition plaintiff characterized as a claim for "wrongful death." Plaintiff alleged Troy's survivors suffered compensable damages arising from the insurer's breach of its duty of good faith and fair dealing associated with the insurance contract. The third part of the petition alleges the defendants (1) continued to deny approval of reasonable and necessary medical treatment until the day before Troy died, (2) made statements shortly before his death it would be cheaper for the insurer if Troy would die, and (3) the insurer's conduct and statements caused Stacey severe emotional distress.
¶8 A motion to dismiss was filed by McGivern & Gilliard and St. Paul. The motion to dismiss by McGivern & Gilliard was denied on Plaintiff's intentional infliction of emotional distress claim, and the trial court noted plaintiff had agreed the bad faith and wrongful death claims were not being asserted against McGivern & Gilliard.
¶9 The motion to dismiss brought by St. Paul was granted on plaintiff's "claim of bad faith" and denied on plaintiff's wrongful death claim. The trial court noted plaintiff voluntarily dismissed with prejudice the claim against St. Paul based upon intentional infliction of emotional distress.3
¶10 One claim was left for adjudication against McGivern & Gilliard, the one for intentional infliction of emotional distress. Plaintiff subsequently filed a dismissal with prejudice for "this case," i.e., all causes of action against McGivern & Gilliard, and this party dropped out of the case. After the dismissal of McGivern & Gilliard one claim was left for adjudication in this case, the claim against St. Paul for wrongful death.
¶11 St. Paul sought summary judgment on plaintiff's wrongful death claim. St. Paul argued: (1) No wrongful death claim may arise from the breach of an insurance contract; (2) Plaintiff's exclusive remedy was provided by the worker' compensation statutes; (3) No evidence exists that Troy's death was the result of a denial of the nutritional consult; (4) No order was issued by the Workers' Compensation Court required for a breach of contract claim; and (5) Any claim for damages based upon a breach of contract would be limited to the value of the nutritional consult. St. Paul also argued Troy could have obtained a nutritional consult and submitted the charge to the Workers' Compensation Court as part of his claim. Defendant asserted Troy could have, at any time, filed a Form 9 with the Workers' Compensation Court and the issue of a nutritional consult would have been set for trial and determination by the Workers' Compensation Court.
¶12 Plaintiff responded to St. Paul's arguments and argued the wrongful death claim was not based upon a tort, but breach of an insurance contract. Plaintiff also argued the workers' compensation death benefits did not bar a separate recovery for wrongful death because the insurer did not "stand in the shoes of the employer." Plaintiff argued no certification order from the Workers' Compensation Court was required to bring a District Court action for an insurer's failure to provide medical benefits to a person covered by an insurance contract, i.e., opinions from this Court requiring a certification order apply to bad faith actions and not actions for breach of contract. Plaintiff also argued that "medical providers, with rare exception, require authorization from a workers' compensation carrier prior to providing treatment." Further, plaintiff alleged the lack of a timely authorization from St. Paul was a cause of Troy's death.
¶13 The District Court granted St. Paul's motion for summary judgment. The trial court simultaneously determined plaintiff's motion for partial summary judgment was moot because of the judgment granted to St. Paul. Plaintiff appealed and this Court retained the appeal. Our review is limited to those assignments of error listed in plaintiff's petition in error which are supported by argument and authority in plaintiff's trial court briefs.4
I. Wrongful Death and Plaintiff's Alleged Breach of Contract
¶14 The common law provided no remedy in tort when a person's injury to another resulted in that person's death because the injured person's right of action abated on death.5 Generally, a cause of action in the common law based on contract survived and could be enforced by the personal representative of the deceased.6 Whether an action survived was not based upon the form of the action being in contract versus tort, but whether the alleged injury was to property and rights of property which survived, or injury to the person which did not survive.7
¶15 The harshness of this situation was ameliorated by statutes allowing for the decedent's personal representative to bring an action for the decedent's death only if at the time of his or her death, the decedent had a right of recovery for the injuries in suit.8 General survival and abatement statutes are codified at 12 O.S.2011 §§ 1051-155, inclusive, where, for example, 12 O.S. §§ 10519 & 105310 include causes of action for injury to the deceased, including pain and suffering, as well as a cause of action for damages resulting from the death of the injured person.11
¶16 The § 1053 action allows a plaintiff to recover for "loss of consortium and the grief of the surviving spouse." Plaintiff argues a wrongful death action may be based upon a breach of contract where damages for personal injuries are sought. Again, plaintiff argues the action is for consequential damages resulting from a wrongful death and is based in contract.
¶17 Historically, when an action is a claim which seeks to recover for unliquidated damages for a personal injury caused by negligence, although the negligence complained of amounts to a breach of contract on the part of the defendant, the action is one ex delicto and the law of torts governs that claim.12 We have explained a surviving spouse's wrongful death action "is purely statutory, [and] suit may be brought only by a person expressly authorized by statute to do so" within the two-year limitations period provided by § 1053.13 Of course, an action founded upon a contract survives and may be brought by an executor or administrator of the deceased.14
¶18 We have explained that the injury-to-the-plaintiff action lies only if at the time of death the decedent had a right of recovery for the injury in suit,15 but the wrongful death independent survivor statutory action is viewed as not a derivative action16 arising completely from the personal-injury-to-the-plaintiff action.17 An action for breach of contract and an action in tort may arise from the same set of facts and a person injured by the substandard performance of a duty derived from a contractual relationship may rely on a breach of contract or tort theory, or both.18 A person injured by the substandard performance of a duty derived from a contractual relationship may rely on a breach of contract or tort theory, or both; but even if the evidence supports both, the claimant can achieve but a single recovery.19 This single recovery by a plaintiff has been historically recognized by the Legislature in statute, and our Court has explained that an employer and insurance carrier have been protected from a claimant obtaining a "double recovery" for the same injury.20
¶19 As we explain, plaintiff's action against the insurance carrier is for allegedly causing or contributing to the cause of the worker's death, this same death for which workers' compensation benefits were paid. Plaintiff's action is attempting to make the insurance carrier a type of unspecified "successive tortfeasor"21 or impose one type of "concurrent-breach-of-contract doctrine"22 where the insurance carrier's actions independent of the workers' compensation cause of action have concurred with the injury element of the compensation cause of action to produce the single or indivisible injury, i.e., the death of the deceased. Further, plaintiff's alleged successive/concurrent cause of action assumes a right to recover damages without the prior payment of death benefits creating any legal consequence for the asserted successive/concurrent cause of action.
¶20 Plaintiff's action arises from a workers' compensation insurance policy and a court-ordered duty based on that policy where (1) plaintiff alleges a death occurred and (2) workers' compensation death benefits were previously paid for that death. Plaintiff's District Court action to recover for Troy's injury is governed by workers' compensation jurisdictional remedies as we now explain, and we need not reach the issues of alleged successive or concurrent liability for an injury for which workers' compensation benefits were previously paid.23
II. District Court Action Based Upon Delay in Workers' CompensationMedical Care Must Be Certified by the Workers' Compensation Court
¶21 Plaintiff has brought an action against a workers' compensation insurer. An insurer's duty may arise from one of three possible sources: (1) an express promise to pay in the insurance contract, (2) a promise implied in fact, or (3) a promise implied in law.24 An example of a promise implied in fact is a third-party beneficiary contract.25 Plaintiff relies upon the employer's workers' compensation insurance policy being created for the benefit of workers such as the plaintiff and the third party beneficiary statute, 15 O.S. 2011 § 29,26 as well as an order of the Workers' Compensation Court requiring St. Paul to pay for Troy's medical care.
¶22 A worker's compensation insurer owes a duty to act in good faith and deal fairly towards the injured employee who by statute is made a third-party beneficiary to the insurance.27 In Sizemore v. Continental Cas. Co. we said that a bad faith claim against a workers' compensation insurer is separate from the injured worker's employment relationship, and it arises against an insurer only after there has been an award against the employer.28
¶23 Our 2009 opinion in Summers v. Zurich American Insurance Company29 addressed an allegation an insurer had failed to provide benefits in a timely manner as ordered by the Workers' Compensation Court, and the plaintiff brought a District Court action alleging a violation of the insurer's duty of good faith and fair dealing. We noted the procedure for a worker obtaining an order from the Workers' Compensation Court prior to filing an action in a District Court and the required notice to an employer and insurer. The procedure for obtaining an order in the Workers' Compensation Court provided a respondent and insurance carrier with a hearing and an opportunity for them show a good cause why a benefit previously ordered by that court had not been provided.30 If the insurer failed to show good cause for not providing a court-ordered benefit, then the Workers' Compensation Court issued an order with specific findings stating the basis for that court's determination on the insurer's failure of proof in the proceeding before the court.
¶24 We explained the procedure for obtaining a certification order was not restricted to a workers' compensation monetary award, and "encompasses an insurer's bad faith refusal to provide any benefits which (1) have been ordered in a final order of the Workers' Compensation Court and (2) have been certified as having not been provided as ordered."31 If a claimant received a Workers' Compensation Court order certifying that non-monetary benefits were not provided as awarded by that court, then the claimant could "proceed with a tort claim for bad faith in district court."32
¶25 In Meeks v. Guarantee Insurance Company,33 the Court emphasized the above-referenced language in Summers explaining our prior opinion in Sizemore34 and the certification procedure in the Workers' Compensation Court.35 The employer and its insurer must be given at least ten days notice "prior to the trial on certification."36 This trial adjudicates a claimant's allegation that a previously awarded benefit was not provided. This procedure provides employer with a notice and opportunity to be heard on the issue whether a particular workers' compensation benefit was previously awarded and whether good cause exists for not granting the claimant's application for a certification order.
¶26 The Court again explained that an employee seeking to obtain previously awarded non-monetary benefits should proceed directly to a rule of the Workers' Compensation Court which provides notice to the employer and the insurance carrier, and then a certification order may issue if the insurer fails to demonstrate good cause.37 We stated this Rule applies when the issue is a failure of insurer to provide previously awarded medical benefits or monetary benefits.38 In Meeks the employee could proceed with the District Court bad-faith action "[b]ecause the certification requirements were met here."39 A certification order must state: (1) the identity or nature of the previously awarded benefit, (2) this previously awarded benefit was not provided as ordered, and (3) employer/insurer lacked good cause in failing to show why a certification order should not be granted.40
¶27 Plaintiff agreed with St. Paul that no certification order had been issued by the Workers' Compensation Court. Plaintiff argued no certification order from the Workers' Compensation Court was necessary because the insurer ultimately approved the nutritional consult. Plaintiff also argued the certification order applies where a workers' compensation benefit has been denied, and does not apply when a benefit has been delayed. In support of this statement plaintiff argues a Workers' Compensation Court has no jurisdiction to determine "unreasonable delay" in providing a benefit previously awarded. Plaintiff's view is that an employer/insurer should not be entitled to a hearing when an alleged benefit has been delayed and in such case an action on the contract for failing to provide reasonable and necessary medical care may be immediately brought in a District Court. We disagree.
¶28 Generally, a wrongful death action has constitutional protection by Okla. Const. Art. 23 § 7.41 In 1963 we explained Art. 23 § 7 had been amended by the people in 1950 in order to substitute a statutory exclusive workers' compensation remedy for the remedy provided by the general wrongful death statute.42 Twenty years later we explained an action under the Workers' Compensation Law was the exclusive remedy against an employer for deaths covered by that Act.43 A worker's allegation of not receiving a previously awarded benefit is adjudicated by the Workers' Compensation Court, and this adjudication is not limited to employer's denial of a benefit versus a delay by an employer or an insurer in providing a benefit. In Stewart v. Mercy Health Center, Inc.,44 we stated: "Our jurisprudence makes it clear that failure to obtain an order of the Workers' Compensation Court certifying the award as unpaid is a jurisdictional requirement to filing a bad faith claim for failure to pay benefits in the district court."45 This workers' compensation insurance carrier had its legal duty for providing payment adjudicated by an order of the Workers' Compensation Court. Plaintiff, like any other claimant seeking to enforce an award requiring an insurer to provide a benefit, "must first utilize the mechanism provided in section 42(A) of the Act and have the award certified for enforcement."46 The insurer has a workers' compensation statutory right to defend its conduct in the context of its good-cause burden.47 We have previously recognized a worker as a third-party beneficiary to the insurer's workers' compensation insurance contract may hold the insurer liable for a delay or failure to pay or provide for coverage as required by its policy utilizing the remedy provided by workers' compensation statutes.
¶29 Plaintiff attempts to go around this procedure we classified as a "jurisdictional requirement" in Stewart by characterizing the claim as a breach of contract and an action for damages resulting from an alleged wrongful death. The clear public policy expressed in the amended version of Art. 23 § 7 requires available workers' compensation remedies for any type of wrongful death claim to be pursued in the Workers' Compensation Court when required by the workers' compensation statutes.48
¶30 Plaintiff argues the scope of the remedies for a plaintiff's action against an insurer are different in a District Court from those available before the Workers' Compensation Court. A mere difference in a remedy does not demonstrate an unconstitutionally inadequate or insufficient remedy.49 Plaintiff also refers to Okla. Const Art. 5 § 4650 and alleges workers' compensation insurers receive different treatment than other insurers for the purpose of a wrongful death claim. This allegation fails to recognize that the people expressed their desire in Art. 23 § 7 for workers' compensation wrongful death related claims to be adjudicated within the workers' compensation jurisdictional boundaries.
III. Conclusion
¶31 Plaintiff's District Court action alleging breach of contract also included a request for consequential damages for the death of an individual based upon a workers' compensation insurance carrier's legal duties as previously determined by the Workers' Compensation Court. Plaintiff's District Court action against the workers' compensation carrier required plaintiff to use the exclusive remedy provided by the Workers' Compensation Act prior to seeking relief in District Court. The summary judgment granted by the District Court to St. Paul is affirmed.

¶32 COMBS, C.J.; GURICH, V.C.J.; and KAUGER, WINCHESTER, and EDMONDSON, JJ., concur.
¶33 WYRICK, J., concur in judgment.
¶34 COLBERT, REIF, JJ., dissent.

FOOTNOTES

1 Defendants' Motion for Summary Judgment, Appellant's Record on Accelerated Appeal, Tab 8, Exhibit 19.

2 Plaintiff's First Amended Petition, Appellant's Record on Accelerated Appeal, Tab 2.

3 Order of the District Court on defendants' motions to dismiss, Appellant's Record on Accelerated Appeal, Tab 6.

4 This appeal was prosecuted pursuant to Rule 1.36 which provides for the trial court filings to serve as the appellate briefs and the assignments of error on appeal are those listed in an appellant's petition in error which are supported by argument and authority. Osage Nation v. Board of Commissioners of Osage County, 2017 OK 34, ¶ 4, 394 P.3d 1224, 1229.

5 Nealis v. Baird, 1999 OK 98, ¶ 19, 996 P.2d 438, 446.

6 Treese v. Spurrier Lumber Co., 1925 OK 998, 242 P. 235, 237.

7 Kramer v. Eysenbach, 1939 OK 394, 96 P.2d 1049, 1052-1053, quoting Columbian National Life Ins. Co. v. Lemmons, 1923 OK 1147, 222 P. 255 (The line of demarcation at common law, separating those actions which survive from those that do not, is that in the first the wrong complained of affects primarily and principally property rights, and the injuries to the person are merely incidental, while in the latter the injury complained of is to the person, and the rights of property affected are merely incidental.). See, e.g., Note, Inadequacies of English and State Survival Legislation, 48 Harv.L.Rev. n. 5, 1008 (1935) (stating same principle relied on in Kramer v. Eysenbach, supra, concluding "This distinction is recognized in all the authorities, " and relying in part on Jenkins v. French, 58 N.H. 532, 533 (1879).

8 Nealis, 1999 OK 98, ¶ 19, 996 P.2d at 446.

9 12 O.S.2011 § 1051:
In addition to the causes of action which survive at common law, causes of action for mesne profits, or for an injury to the person, or to real or personal estate, or for any deceit or fraud, shall also survive; and the action may be brought, notwithstanding the death of the person entitled or liable to the same.

10 12 O.S.2011 § 1053:
A. When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, or his or her personal representative if he or she is also deceased, if the former might have maintained an action, had he or she lived, against the latter, or his or her representative, for an injury for the same act or omission. The action must be commenced within two (2) years.
B. The damages recoverable in actions for wrongful death as provided in this section shall include the following: Medical and burial expenses, which shall be distributed to the person or governmental agency as defined in Section 5051.1 of Title 63 of the Oklahoma Statutes who paid these expenses, or to the decedent's estate if paid by the estate.
The loss of consortium and the grief of the surviving spouse, which shall be distributed to the surviving spouse.
The mental pain and anguish suffered by the decedent, which shall be distributed to the surviving spouse and children, if any, or next of kin in the same proportion as personal property of the decedent.
The pecuniary loss to the survivors based upon properly admissible evidence with regard thereto including, but not limited to, the age, occupation, earning capacity, health habits, and probable duration of the decedent's life, which must inure to the exclusive benefit of the surviving spouse and children, if any, or next of kin, and shall be distributed to them according to their pecuniary loss.
The grief and loss of companionship of the children and parents of the decedent, which shall be distributed to them according to their grief and loss of companionship.
C. In proper cases, as provided by Section 9.1 of Title 23 of the Oklahoma Statutes, punitive or exemplary damages may also be recovered against the person proximately causing the wrongful death or the person's representative if such person is deceased. Such damages, if recovered, shall be distributed to the surviving spouse and children, if any, or next of kin in the same proportion as personal property of the decedent.
D. Where the recovery is to be distributed according to a person's pecuniary loss or loss of companionship, the judge shall determine the proper division.
E. The above-mentioned distributions shall be made after the payment of legal expenses and costs of the action.
F. 1. The provisions of this section shall also be available for the death of an unborn child as defined in Section 1-730 of Title 63 of the Oklahoma Statutes.2. The provisions of this subsection shall not apply to:a. acts which cause the death of an unborn child if those acts were committed during a legal abortion to which the pregnant woman consented, orb. acts which are committed pursuant to the usual and customary standards of medical practice during diagnostic testing or therapeutic treatment.
3. Under no circumstances shall the mother of the unborn child be found liable for causing the death of the unborn child unless the mother has committed a crime that caused the death of the unborn child.

11 Boler v. Security Health Care, L.L.C., 2014 OK 80, ¶ 10, 336 P.3d 468, 472, citing Ouellette v. State Farm Ins. Co., 1994 OK 79, 918 P.2d 1363, 1366, and Okla. Const. Art. 23, § 7 for the principle that Oklahoma's Wrongful Death Act created a new cause of action for pecuniary losses suffered by the deceased's spouse and next of kin by reason of decedent's death. See Deep Rock Oil Corp v. Sheridan, 173 F.2d 186, 190 (10th Cir. 1949) (Two separate and distinct causes of action arose if the injury and the death of the deceased was caused by the negligence of defendant, one was for injury to plaintiff's person, such as pain and suffering, which survives pursuant to 12 O.S. § 1051; and the other an independent cause of action for damages resulting from the death of the injured person inuring to the benefit of the surviving spouse, children, if any, or next of kin, and brought pursuant to 12 O.S. § 1053.
See also St. Louis & S.F.R. Co. v. Goode, 1914 OK 237, 142 P. 1185, 1188 (Comp. Laws 1909 § 5943 (12 O.S §1051) and § 5944 (12 O.S.§ 1052) involve a right independent of the right of action provided by Comp. Laws 1909 § 5945 (12 O.S. § 1053) and § 5946 (12 O.S. § 1054), and: "When it is once conceded or established that the widow's action, under section 5945 of the statute, is an entirely new cause of action, it follows that it is independent, both in the right and the enforcement of it, of section 5943; in other words, this last-named section might be stricken from the law without injury to the right to recover the widow's damage. . . This leads us to believe that the two causes of action, in cases such as this, are coexistent; that a recovery on the one does not bar a recovery on the other; that the damages to the estate begin with the wrong and cease with the death; that the widow's damages begin with the death; that they do not cover the same field, nor do they overlap.").

12 Martin v. Chicago, R. I. & P. Ry. Co., 1915 OK 216, 148 P. 711, 714, quoting Doremus v. Root et al., 94 Fed. 760, 761 (C. C. Wash. 1899).

13 Hamilton By and Through Hamilton v. Vaden, 1986 OK 36, 721 P.2d 412, 415.

14 Columbian National Life Ins. Co. v. Lemmons, 1923 OK 1147, 222 P. 255 (Court relied on 1921 Okla. Stat. 1198 (now codified at 58 O.S.2011 § 252) and stated a cause of action would survive to the administrator if founded on a contract, and then observed "the same rule applies in actions on implied or quasi contracts, although founded upon a tort.").
58 O.S.2011 § 252: "Actions for the recovery of any property, real or personal, or for the possession thereof, and all actions founded upon contracts, may be maintained by and against executors and administrators in all cases and in the same courts in which the same might have been maintained by or against their respective testators and intestates."

15 Ouellette v. State Farm Mutual Automobile Ins. Co., 1994 OK 79, n. 14, 918 P.2d 1363,1366.

16 Boler, 2014 OK 80, ¶ 27, 336 P.3d at 477, and authority cited in note 11 supra.

17 Nealis v. Baird, 1999 OK 98, ¶ 19, 996 P.2d 438, 446.

18 Estate of Hicks ex rel. Summers v. Urban East, Inc., 2004 OK 36, ¶ 14, 92 P.3d 88, 92 citing Finnell v. Jebco Seismic, 2003 OK 35, 67 P.3d 339, 344.

19 Estate of Hicks, supra and Finnell, supra, at note 18.

20 See, for examples, both Nicholas v. Morgan, 2002 OK 88, ¶¶12, 17, 58 P.3d 775, 780, 782, discussing former 85 O.S. § 44, and the prohibition on "double recovery," and ACCOSIF v. American States Ins. Co., 2000 OK 21, ¶¶ 7-8, 1 P.3d 987, 992-993, discussing a difference between a subrogation claim and a statutory recoupment against a workers' compensation claimant.

21 Compare, (1) Nelson v. Enid Medical Associates, Inc., 2016 OK 69, n. 70, 376 P.3d 212, citing Thomas v. E--Z Mart Stores, Inc., 2004 OK 82, ¶ 21, 102 P.3d 133, 139, where the Court distinguished joint tortfeasors causing injury by concerted actions pursuant to a common purpose or design, and concurrent tortfeasors causing a single and indivisible injury by independent actions with (2) Hoyt v. Paul R. Miller, M.D., Inc., 1996 OK 80, 921 P.2d 350, 355-356, explaining a physician is a "successive tortfeasor," and not a joint or concurrent one, when the physician negligently treats a plaintiff suffering from a previous tort injury.

22 One court has stated the concurrent-breach-of-contract doctrine is "[w]hen two defendants independently breach separate contracts, and it is not 'reasonably possible' to segregate the damages, the defendants are jointly and severally liable." In re: Emerald Casino, Inc., 867 F.3d 743, 765 (7th Cir. 2017) quoting InsureOne Indep. Ins. Agency, LLC v. Hallberg, 364 Ill.Dec. 451, 976 N.E.2d 1014, 1030 (App. Ct. 1st Dist. 2012). Cf. DKN Holdings LLC v. Faerber, (2015) 61 Cal.4th 813, 189 Cal.Rptr.3d 809, 352 P.3d 378, 385 (citing Restatement (Second) of Judgments, § 49, and stating "The injured party has separate claims against each obligor, regardless of whether the obligation arises from a tort or breach of contract."); Restatement (Second) Judgments, § 49 (1982) ("A judgment against one person liable for a loss does not terminate a claim that the injured party may have against another person who may be liable therefor."); Carris v. John R. Thomas and Associates, P.C., 1995 OK 33, 896 P.2d 522, 526 (distinguishing tort claim and contract claim against different parties arising from the same set of facts). We expressly decline to address the applicability of Restatement (Second) of Judgments § 49 or the concurrent-breach-of-contract doctrine in Oklahoma jurisprudence or its application herein. See In Re Guardianship of Berry, 2014 OK 56, n. 43, 335 P.3d 779 and Young v. Station 27, Inc., 2017 OK 68, n. 36, 48, 404 P.3d 829 cited in note 23 infra.

23 We need not address whether the asserted cause of action exists or the effect of the paid compensation benefits upon that cause of action because the workers' compensation remedy acts as procedural bar to plaintiff's District Court action as we have explained herein. This is so because (1) the parties have not defined the nature of the District Court cause of action and addressed the successive/concurrent issues, (2) our disposition herein makes such inquiry hypothetical and advisory, and (3) we do not address such issues in an appeal. In Re Guardianship of Berry, 2014 OK 56, n. 43, 335 P.3d 779 (we decline to address a purely hypothetical question in an appeal); Young v. Station 27, Inc., 2017 OK 68, n. 36, 48, 404 P.3d 829 (issues present but not briefed by the parties may be treated on appeal as hypothetical).

24 Hensley v. State Farm Fire and Casualty Company, 2017 OK 57, n. 11, 398 P.3d 11, 17, citing Shebester v. Triple Crown Insurers, 1992 OK 20, 826 P.2d 603, 610; Uptegraft v. Home Ins. Co., 1983 OK 41, 662 P.2d 681, 684.

25 Hensley v. State Farm Fire and Casualty Company, 2017 OK 57, ¶ 17, 398 P.3d at 17.

26 15 O.S.2011 § 29: "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."

27 Meeks v. Guarantee Ins. Co., 2017 OK 17, n.4, & ¶ 9, 392 P.3d 278, 284.

28 Sizemore v. Continental Cas. Co., 2006 OK 36, ¶ 14, 142 P.3d 47, 51.

29 2009 OK 33, 213 P.3d 565.

30 Id. 2009 OK 33, ¶ 10, 213 P.3d at 568.

31 Summers, 2009 OK 33, ¶ 9, 213 P.3d at 568.

32 Id. 2009 OK 33, ¶ 13, 213 P.3d at 569.

33 2017 OK 17, 392 P.3d 278.

34 Sizemore v. Continental Cas. Co., 2006 OK 36, 142 P.3d 47.

35 Meeks, 2017 OK 17, ¶ 13, 392 P.3d at 285.

36 Meeks, 2017 OK ¶ 9, 392 P.3d at 284, citing 85 O.S. Supp. 2008, Ch. 4, Workers' Compensation Court Rules, Rule 58. Rule 58, Certification of awards, states:
"An application for an order directing certification to district court of any workers' compensation award may be heard after notice to the respondent and insurance carrier has been given at least ten (10) days before the scheduled trial thereon. At such trial the respondent and insurance carrier shall be afforded an opportunity to show good cause why the application should not be granted."

37 Id. 2017 OK 17, ¶ 14, 392 P.3d at 285.

38 Id. 2017 OK 17, ¶ 14, 392 P.3d at 385 ("This rule is applicable whether an employee seeks judicial relief for a nonmonetary award, e.g., medical benefits, or where an employer has failed to comply with, but ultimately satisfies, a WCC award of monetary benefits.").

39 Id. 2017 OK 17, ¶ 1, 392 P.3d at 281.

40 Meeks, 2017 OK 17, ¶ 14, 392 P.3d 278, 285.

41 F. W. Woolworth Co. v. Todd, 1951 OK 36, 231 P.2d 681, 684 (the right of action to recover damages for the wrongful death of a person was provided Oklahoma Statutes 1893 § 4313 (12 O.S. § 1053), and that "was one legislative act which the framers of the constitution desired to keep intact, and to that end they included Section 7, Article 23 in the constitution.").
Okla. Const. Art. 23, § 7, provides:
The right of action to recover damages for injuries resulting in death shall never be abrogated, and the amount recoverable shall not be subject to any statutory limitation, provided however, that the Legislature may provide an amount of compensation under the Workers' Compensation Law for death resulting from injuries suffered in employment covered by such law, in which case the compensation so provided shall be exclusive, and the Legislature may enact statutory limits on the amount recoverable in civil actions or claims against the state or any of its political subdivisions.

42 Roberts v. Merrill, 1963 OK 250, 386 P.2d 780, 783.

43 Hughes Drilling Co. v. Crawford, 1985 OK 16, 697 P.2d 525, 529, citing Rios v. Nicor Drilling, 1983 OK 74, 665 P.2d 1183.

44 2014 OK 101, 341 P.3d 70.

45 2014 OK 101, ¶ 3, 341 P.3d 70.

46 Sizemore, 2006 OK 36, ¶ 26,142 P.3d at 54.

47 Meeks, 2017 OK 17, ¶ 14, 392 P.3d 278, 285.

48 Okla. Const. Art. 23 § 7; Rios v. Nicor Drilling, 1983 OK 74, 665 P.2d 1183.

49 The 1950 amendment to Art. 23 ¶ 7 did not "abolish or abridge" a remedy, but substituted one remedy for another. Roberts v. Merrill, 1963 OK 250, 386 P.2d 780, 783.

50 Okla. Const. Art. 5 § 46 provides in part: " The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing: . . . Regulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings or inquiry before the courts, justices of the peace, sheriffs, commissioners, arbitrators, or other tribunals, or providing or changing the methods for the collection of debts, or the enforcement of judgments or prescribing the effect of judicial sales of real estate...."

Citationizer© Summary of Documents Citing This Document

Cite
Name
Level

None Found.

Citationizer: Table of Authority

Cite
Name
Level

Oklahoma Supreme Court Cases
 CiteNameLevel

 1986 OK 36, 721 P.2d 412, 57 OBJ 1553, Hamilton By and Through Hamilton v. VadenDiscussed
 1939 OK 394, 96 P.2d 1049, 186 Okla. 234, KRAMER v. EYSENBACHDiscussed
 1914 OK 237, 142 P. 1185, 42 Okla. 784, ST. LOUIS & S. F. R. CO. v. GOODEDiscussed
 1992 OK 20, 826 P.2d 603, 63 OBJ 450, Shebester v. Triple Crown InsurersDiscussed
 1915 OK 216, 148 P. 711, 46 Okla. 169, MARTIN v. CHICAGO R. I. & P. RY. CO.Discussed
 1994 OK 79, 918 P.2d 1363, 65 OBJ 2222, Ouellette v. State Farm Mut. Auto. Ins. Co.Discussed at Length
 1963 OK 250, 386 P.2d 780, ROBERTS v. MERRILLDiscussed at Length
 1923 OK 1147, 222 P. 255, 96 Okla. 228, COLUMBIAN NAT. LIFE INS. CO. v. LEMMONSDiscussed at Length
 1995 OK 33, 896 P.2d 522, 66 OBJ 1239, Carris v. John R. Thomas and Associates, P.C.Discussed
 2002 OK 88, 58 P.3d 775, NICHOLAS v. MORGANDiscussed
 2003 OK 35, 67 P.3d 339, FINNELL v. JEBCO SEISMICDiscussed
 2004 OK 36, 92 P.3d 88, ESTATE OF HICKS v. URBAN EAST, INC.Discussed
 2004 OK 82, 102 P.3d 133, THOMAS v. E-Z MART STORES, INC.Discussed
 2006 OK 36, 142 P.3d 47, SIZEMORE v. CONTINENTAL CASUALTY COMPANYDiscussed at Length
 1996 OK 80, 921 P.2d 350, 67 OBJ 2308, Hoyt v. Paul R. Miller, M.D., Inc.Discussed
 2009 OK 33, 213 P.3d 565, SUMMERS v. ZURICH AMERICAN INSUR. CO.Discussed at Length
 2014 OK 56, 335 P.3d 779, IN THE MATTER OF THE GUARDIANSHIP OF BERRYDiscussed at Length
 2014 OK 80, 336 P.3d 468, BOLER v. SECURITY HEALTH CARE, L.L.C.Discussed at Length
 2014 OK 101, 341 P.3d 70, STEWART v. MERCY HEALTH CENTER, INC.Discussed at Length
 2016 OK 69, 376 P.3d 212, NELSON v. ENID MEDICAL ASSOCIATES, INC.Discussed
 2017 OK 17, 392 P.3d 278, MEEKS v. GUARANTEE INSURANCE COMPANYDiscussed at Length
 2017 OK 34, 394 P.3d 1224, OSAGE NATION v. BD. OF COMMISSIONERS OF OSAGE COUNTY and OSAGE NATION v. OSAGE COUNTY BD. OF ADJUSTMENTDiscussed
 2017 OK 57, 398 P.3d 11, HENSLEY v. STATE FARM FIRE AND CASUALTY CO.Discussed at Length
 2017 OK 68, 404 P.3d 829, YOUNG v. STATION 27, INC.Discussed at Length
 1999 OK 98, 996 P.2d 438, 70 OBJ 3640, Nealis v. BairdDiscussed at Length
 2000 OK 21, 1 P.3d 987, 71 OBJ 778, ACCOSIF v. American States Ins. Co.Discussed
 1925 OK 998, 242 P. 235, 115 Okla. 188, TREESE v. SPURRIER LBR. CO.Discussed
 1951 OK 36, 231 P.2d 681, 204 Okla. 532, F. W. WOOLWORTH CO. v. TODDDiscussed
 1983 OK 41, 662 P.2d 681, Uptegraft v. Home Ins. Co.Discussed
 1983 OK 74, 665 P.2d 1183, Rios v. Nicor Drilling Co.Discussed at Length
 1985 OK 16, 697 P.2d 525, Hughes Drilling Co. v. CrawfordDiscussed
Title 12. Civil Procedure
 CiteNameLevel

 12 O.S. 1051, Additional Causes of ActionDiscussed
 12 O.S. 1052, Actions which Abate on Death of PartyCited
 12 O.S. 1053, Wrongful Death - Limitation of Actions - DamagesDiscussed at Length
 12 O.S. 1054, Cause of Action Brought by Widow or Next of KinCited
Title 15. Contracts
 CiteNameLevel

 15 O.S. 29, Enforcement of Contract by Third Party BeneficiaryDiscussed
Title 58. Probate Procedure
 CiteNameLevel

 58 O.S. 252, Actions Maintained by and against Executors and AdministratorsDiscussed
Title 85. Workers' Compensation
 CiteNameLevel

 85 O.S. 44, RepealedCited

oscn

EMAIL: webmaster@oscn.net
Oklahoma Judicial Center
2100 N Lincoln Blvd.
Oklahoma City, OK 73105

courts

Supreme Court of Oklahoma
Court of Criminal Appeals
Court of Civil Appeals
District Courts

decisions

New Decisions
Supreme Court of Oklahoma
Court of Criminal Appeals
Court of Civil Appeals

programs

The Sovereignty Symposium

Alternative Dispute Resolution
Early Settlement Mediation
Children's Court Improvement Program (CIP)
Judicial Nominating Commission
Certified Courtroom Interpreters
Certified Shorthand Reporters
Accessibility ADA

Contact Us
Careers
Accessibility ADA